**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>JUAN F. RIOS,<br><br>            Debtor | Chapter 13<br>Case No. 12-12956-FJB |

**MEMORANDUM OF DECISION**

    **I.      INTRODUCTION**

The matter at issue concerns the eligibility of the Debtor, Juan Rios, to reorganize under Chapter 13 pursuant to 11 U.S.C. § 109(e). I conducted a non-evidentiary hearing on the matter on August 9, 2012, and for the reasons set forth below, I find the Debtor is not eligible to remain in Chapter 13 and will enter a separate order dismissing the case.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and Local Rule 201 of the United States District Court for the District of Massachusetts. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

    **II.     FACTS**

The relevant facts are not in dispute. In March of 2011, the Debtor attempted to reorganize his debts under Chapter 11 of the Bankruptcy Code.[1] Unable to secure the vote of impaired creditor, McDonough Family, LLLP ("McDonough"), the Debtor voluntarily dismissed the bankruptcy case on

---
[1] 11 U.S.C. § 101 *et seq.*

1

January 11, 2012.[2]  The Debtor has endeavored to make a second attempt to reorganize under Chapter 13, filing the current case on April 6, 2012.

On May 9, 2012, McDonough filed a Motion for Relief from Stay.  McDonough's Motion asserts that it holds a promissory note executed by the Debtor and secured by a mortgage on real property located at 45-47 Orleans Street, East Boston, Massachusetts (the "Property").  The Motion alleges that the Debtor has failed to make post-petition payments on the note and is not current with his municipal utility and tax obligations.  The Motion fixes the current principal balance on the note at $560,667.30, with accrued interest, late charges, and costs of collection comprising an additional $267,496.85.  On June 21, 2012, McDonough filed a proof of claim for $831,169.46 substantiating the debt referenced in the Motion.  This amount includes $244,937.75 in pre-petition arrearages.[3]

The Debtor filed his schedules and Chapter 13 plan on May 22, 2012.  Schedule D lists the McDonough claim at $560,667.30.  It is unclear what portion of this amount, if any, consists of pre-petition arrearages.  The Debtor's plan proposes to modify McDonough's rights pursuant to 11 U.S.C. § 1322(b)(2) by reducing its secured claim to the value of the Property and paying the claim together with interest at 3.7% over sixty months in accordance with § 1325(a)(5)(B)(ii).  This modification also gives McDonough an unsecured claim for the amount owed on the note in excess of the value of the Property, which shall be discharged without payment as the plan offers no payment to unsecured creditors.  The size of this unsecured claim is disputed because the parties do not agree on the value of the Property securing the claim.  On his Schedule A, the Debtor values it at $326,150.  McDonough has obtained a broker's price opinion valuing it at $370,000.[4]

The Court held a hearing on McDonough's Motion for Relief from Stay on June 7, 2012.  McDonough argued that, were the Debtor to bifurcate its claim in the manner described above, the

---

[2] The previous case is No. 11-11907.

[3] *See* Claim No. 6.  The Debtor has not objected to McDonough's claim.

[4] *See Motion of McDonough Family, LLLP for Relief from the Automatic Stay* [Doc. 21], Exh. D.

resulting unsecured portion would disqualify him from maintaining a Chapter 13 case since the total unsecured debt would exceed the limits prescribed by 11 U.S.C. § 109(e).  This assertion prompted the Court to issue an order to show cause why the Debtor's case should not be dismissed (the "Order to Show Cause").  The Debtor submitted a written response on July 26, 2012 in which he acknowledged that the unsecured obligation arising after modification of McDonough's claim would make him ineligible for a Chapter 13 bankruptcy.  Following the June 7th hearing, the Debtor's counsel asked the Debtor to provide proof of all payments made to McDonough in an effort to produce evidence that he had paid in excess of the amount listed in McDonough's proof of claim.  At the August 9 hearing counsel reported that the Debtor had produced evidence to dispute $63,967.56 of the alleged pre-petition arrearages, however, he acknowledged an inability, at present, to fully account for enough payments to reduce McDonough's claim to an amount that would bring the Debtor within the § 109(e) eligibility limits.  Thus, the Debtor concedes that, were the secured and unsecured portions of the McDonough debt counted separately on the date of filing, he would have exceeded the debt limits of § 109(e).

### III. DISCUSSION

Section 109(e) of the Bankruptcy Code states:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 . . . may be a debtor under chapter 13 of this title.

Section 109(e) was part of the first iteration of the Bankruptcy Code enacted by the Bankruptcy Reform Act of 1978.  Congress intended to extend Chapter 13 relief under the Code beyond "wage earners" to self-employed individuals including sole proprietors (i.e., "mom and pop" businesses) who were previously limited to the cumbersome Chapter XI reorganization under the Bankruptcy Act of 1898.  *See* H.R. Rep No. 95-595, at 119 (1977).  Section 109(e) was initially intended to function as a gatekeeper, determining which proprietors were small enough to reorganize under Chapter 13 and which had to file

3

for Chapter 11 relief, where they would have to comply with more exacting requirements. *See id.* ("The limits create an irrebuttable presumption that Chapter 13 is inappropriate for businesses with more than $100,000 in unsecured debt or more than $500,000 in secured debt."). When Congress raised the Chapter 13 debt limits in 1994, it articulated a further purpose of § 109(e) as "help[ing to] encourage individual debtors to elect chapter 13 repayment over chapter 7 liquidation." *See* 140 Cong. Rec. H 10,764 (daily ed. Oct. 4, 1994) *appearing in 1 Collier on Bankruptcy* App. Pt. 9-74 (Alan N. Resnick & Henry J. Sommer eds, 16th ed.). Although Congress intended qualifying business and consumer debtors to reorganize under Chapter 13, the eligibility limits of § 109(e) should be strictly construed. *See In re Soderlund*, 236 B.R. 271, 274 (9th Cir. B.A.P. 1999).

### (1)  Making the § 109(e) Determination

In its Motion for Relief from Stay, McDonough urges me to consider the proposed treatment of its claim under the Debtor's plan when determining the Debtor's unsecured debt as of the petition date. The Debtor maintains that eligibility for Chapter 13 is based on the status of debts as of the petition date and not upon post-petition events such as treatment of claims in a confirmed Chapter 13 plan. While I agree with the Debtor's statement of the rule, it is not that simple.

### (a)  Basis for Determining the Amount of Unsecured Debt

Generally, eligibility for Chapter 13 is based upon debts as of the petition date and not upon post-petition events such as allowed claims, filed claims, or treatment of claims in a confirmed Chapter 13 plan. *See DeJounghe v. Mender*, 334 B.R. 760, 768 (1st Cir. B.A.P. 2005). In *In re Smith*, the bankruptcy court explained limiting the eligibility analysis to the petition date:

> If [post-petition] events determined eligibility for chapter 13, a debtor with claims exceeding the limits of chapter 13 could file a petition and hope to qualify if some creditors failed to file proofs of claim, notwithstanding the claims listed in schedules. The plain language of section 109(e) does not permit debtors to employ this strategy. Likewise, a debtor may not intentionally gerrymander either the schedules or the treatment of claims in a chapter 13 plan to qualify for chapter 13. As long as a debtor's

4

>   schedules are completed after the exercise of a reasonable level of diligence and are
>   filed in good faith, the schedules will determine a debtor's eligibility for chapter 13.

325 B.R. 498, 502 (Bankr. D.N.H. 2005). Therefore, the starting point of the eligibility analysis is the debtor's schedules. *See DeJounghe*, 334 B.R. at 768. However, the Bankruptcy Appellate Panel's decision in *DeJounghe* notes, "when it appears the debtor did not exercise reasonable diligence or good faith in completing and filing the schedules, the bankruptcy court may look to other evidence, including post-petition events, to determine eligibility." *Id.* A bankruptcy court may also look beyond the schedules to other evidence submitted—including proofs of claim—when a good faith objection to the debtor's eligibility under § 109(e) is raised. *See Soderlund*, 236 B.R. at 273; *accord In re Williams Land Co.*, 91 B.R. 923, 927 (Bankr. D. Or. 1988) (noting that a bankruptcy court may "look past the schedules to other evidence submitted when a good faith objection to the debtor's eligibility has been brought by a party in interest.").

I find that the circumstances of this case require me to consider McDonough's proof of claim when making the § 109(e) eligibility determination. First, in its Motion for Relief from Stay, McDonough asserts a good faith objection to the Debtor's eligibility, thus opening the inquiry to evidence beyond the Debtor's schedules. *See id*. Second, I find that the Debtor failed to exercise reasonable diligence in completing and filing his schedules despite declaring that his schedules "are true and correct to the best of my knowledge, information, and belief."[5] Schedule D lists the McDonough debt at $560,667.30, even though McDonough's Motion for Relief from Stay—filed nearly two weeks earlier—claimed a debt of $828,164.15. Nearly one-third of McDonough's claim consists of pre-petition arrearages. And yet it appears that the Debtor did not take into account the existence of pre-petition arrearages until after the June 7th hearing on eligibility. In his response to my Order to Show Cause, the Debtor's counsel reported that following the June 7th hearing he asked the Debtor to provide proof of mortgage payments in an effort substantiate his assertion that the debt owed to McDonough approximated the amount listed on

---

[5] *See Declaration Concerning Debtor's Schedules* [Doc. 32].

5

Schedule D. The Debtor was only able to produce evidence of $28,429.82 in mortgage payments and an escrow advance reimbursement of $32,092.22. Counsel acknowledged that, even if these payments were set off against McDonough's proof of claim, the Debtor would still be over the unsecured debt limits by approximately $80,000. The diligence with which the Debtor investigated McDonough's claim *after* the June 7th hearing should have been employed when he first filled out his Schedule D. It appears, however, that a diligent investigation would have required that the Debtor reflect the debt owed to McDonough at a higher amount.

Based on the disparity between the amount of the McDonough debt listed on the Debtor's Schedule D and the amount asserted by McDonough, and the Debtor's inability to produce evidence of the pre-petition payments that would resolve such disparity, it is apparent that the Debtor did not complete Schedule D with reasonable diligence, and I so find. I also note that the Debtor first became aware of McDonough's position on the debt's amount during his prior Chapter 11 bankruptcy. There, McDonough filed a proof of claim alleging roughly the same amount of secured debt.[6] Thus, the Debtor entered the current bankruptcy with the benefit of knowing approximately how much McDonough believed it was owed and what he would need to investigate to accurately complete his Schedule D. Reasonable diligence at the time of filing would have uncovered what counsel reported following the June 7th hearing: that the amount of McDonough's claim listed on Schedule D cannot be substantiated at present.[7] Accordingly, I will take the amount set forth in McDonough's proof of claim into consideration when determining the Debtor's eligibility to remain in Chapter 13.

---

[6] McDonough filed a proof of claim on May 27, 2011 [Claim No. 4] claiming $735,394.84.

[7] In concluding that the Debtor did not complete his Schedule D with reasonable diligence, I make no finding as to the amount owed to McDonough. I simply conclude, based on the Debtor's inability to account for the pre-petition arrearages listed in McDonough's proof of claim following the June 7th hearing, that he did not make a reasonable effort to determine the amount owed to McDonough prior to filing his schedules. I also make no finding on this record that the Debtor did not act in good faith in completing his bankruptcy disclosures.

### (b) Using a Section 506(a) Analysis in Determining the Amount of Secured and Unsecured Debt

Given that McDonough's proof of claim is over $800,000 and neither party values the Property at more than $370,000, McDonough is severely undersecured, by any calculation. In determining the amount of unsecured debt for the purposes of the § 109(e) eligibility analysis, I will count the undersecured portion of McDonough's claim as unsecured debt. In doing so, I follow the Fourth, Seventh, Eight, and Ninth Circuits and a majority of bankruptcy courts in utilizing 11 U.S.C. § 506(a) to bifurcate claims listed as secured on the petition date into secured and unsecured portions for determining § 109(e) eligibility. *See Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 983 (9th Cir. 2001)*; Brown and Co. Sec. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. U.S. Through Farmers Home Admin.*, 907 F.2d 80, 82 (8th Cir. 1990); *Matter of Day*, 747 F.2d 405, 406 (7th Cir. 1984). A least one bankruptcy court in the First Circuit also took this approach in *In re Smith*. *See* 325 B.R. at 502; *see also In re Marrama*, 345 B.R. 458, 472 n.23 (Bankr. D. Mass. 2006) (citing *Scovis* for the proposition that the unsecured portion of undersecured debt is counted when making the 109(e) eligibility determination).

A minority view rejects the use of a § 506(a) analysis for the purpose of determining Chapter 13 eligibility. *See e.g., In re Morton*, 43 B.R. 215 (Bankr. E.D.N.Y. 1984). In *Morton*, the court noted that § 506(a) only provides for bifurcation of "allowed" claims concluding:

> If a determination under section 109(e) required bifurcation of claims, then such a determination could only be made after all claims had been filed and all objections that had been made thereto were resolved. . . . It would be anamolous to believe that Congress intended that a determination of whether a debtor was eligible for chapter 13 would have to be delayed until the case has substantially progressed.

*See* 43 B.R. at 220.

I agree with the majority view that *Morton* represents an "overly technical reading of § 506(a) and its impact upon a case" which "ignore[s] obvious realities" of claim bifurcation which will inevitably occur during the pendency of the case. *See Soderlund*, 236 B.R. at 274 *quoting In re McClaskie*, 92 B.R.

7

285, 287 (Bankr. S.D. Ohio 1988). Performing a § 506(a) analysis to define "secured" and "unsecured" debt for the purposes of 109(e) prevents raising form over substance and manipulation of the debt limits. *See id*.

Section 506(a) of the Bankruptcy Code provides that a claim is secured only to the extent of the value of a creditor's interest in the estate's interest in such property. *See In re Smith*, 435 B.R. 637, 647 (B.A.P. 9th Cir. 2010). A claim is not necessarily secured for the purpose of the Bankruptcy Code generally, or § 109(e) specifically, merely because the claimant holds a perfected security interest on the petition date. *See id.* at 648. Rather, the debt is secured only to the extent the claimant can enforce its security interest in property of the estate. *See id.* In this case, the Debtor agrees that McDonough is an undersecured creditor. To the extent its claim exceeds the value of the Property, McDonough will be unable to enforce its security interest, and the undersecured portion will inevitably be treated as an unsecured non-priority claim. Indeed, this is the precise treatment contemplated by the Debtor's plan.

Congress sets § 109(e) debt amounts with the goal of limiting how much unsecured debt a debtor may discharge using the reorganization scheme provided under Chapter 13. Therefore, a practical estimation of the Debtor's unsecured debt on the petition date must include the undersecured portion of McDonough's secured claim, which is rendered unsecured by § 506(a). The view articulated in *Morton* would frustrate the policy objectives of Congress by allowing debtors to make an end run around the § 109(e) debt limits.

Finally, the Debtor's reliance on *DeJounghe* is misplaced. *DeJounghe* concerned whether disputed debts were "contingent" or "unliquidated" and, therefore, excludable from the eligibility analysis. *See* 334 B.R. at 768-69. The court did not address the merits of using § 506(a) to determine eligibility, and I do not find it instructive on the determinative issues raised in this dispute.

### IV.  CONCLUSION

Subtracting from McDonough's claim of $831,169.46 an amount the Debtor claims to have records of paying ($62,967.56), the sum is $768,201.90.  Using the higher of the two estimations of the Property's value, $370,000, McDonough's claim is undersecured by $398,201.90.  Accordingly, I find that the Debtor's unsecured debt exceeds the limits prescribed by 11 U.S.C. § 109(e) by at least $37,726.90, rendering him ineligible for relief under Chapter 13.[8]  A separate ORDER will enter dismissing the case.

Date:  August 21, 2012

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[8] Using the Property value appearing on the Debtor's Schedule A ($326,150) would put him over the unsecured debt limit by $81,576.90.  It should be noted that the Debtor has listed an additional $108,301.56 in unsecured non-priority claims on his Schedule F and that this amount is also counted against the $360,475 unsecured debt limit of § 109(e).

9